# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KELLY M. KLAMM, | ) | CASE NO. 1:16CV02138 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Kelly M. Klamm ("Plaintiff"), challenges the final decision of Defendant,

Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying her

applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. §

405(g). This case is before the undersigned United States Magistrate Judge pursuant to an

automatic referral under Local Rule 72.2(b) for preparation of a Report and Recommendation.

For the reasons set forth below, it is recommended that the Commissioner's final decision be

AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

1

# I.  PROCEDURAL HISTORY

On May 24, 2013, Plaintiff filed applications for POD, DIB, and SSI alleging a disability onset date of September 5, 2012.  (Transcript ("Tr.") 151-156; 168-170).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 137-38).

On June 4, 2015, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE"), testified.  (Tr. 34).  On June 9, 2015, the ALJ issued a written decision finding Plaintiff was not disabled.  (Tr. 13).  The ALJ's decision became final on June 24, 2016, when the Appeals Council declined further review.  (Tr. 1).

On August 26, 2016, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1).  The parties have completed briefing in this case.  (Doc. Nos. 14, 15).  Plaintiff asserts the following assignments of error:

(1)  Whether the ALJ failed to properly evaluate the opinions of Plaintiff's treating physicians;

(2)  Whether the ALJ erred by determining that Plaintiff did not meet Listing 12.04 Affective Disorders.

(Doc. No. 14).

# II.  EVIDENCE

## A.  Personal and Vocational Evidence

Plaintiff was born on January 26, 1990 and she was a "younger" person at all relevant times under social security regulations.  (Tr. 62).  She has a high school education and is able to communicate in English.  (Tr. 42).  Plaintiff has no past relevant work.  (Tr. 54).

**B.    Medical Evidence**

In January 2010, Plaintiff was hospitalized with a chief diagnosis of major depressive disorder, recurrent, severe.  (Tr. 213-217).

On April 28, 2010, she followed up with psychiatrist Samer Alamir, M.D.  (Tr. 262). Plaintiff reported feeling manic and anxious, experiencing racing thoughts, and not sleeping or eating.  *Id.*  She complained of excessive cleaning and spending.  *Id.*  Dr. Alamir diagnosed bipolar disorder I, attention deficit hyperactivity disorder ("ADHD"), panic disorder, and possible obsessive compulsive disorder ("OCD").  *Id.*  On August 3, 2010, she reported increased depression to Dr. Alamir.  (Tr. 260).  In December 2010, she reported intense anger and mood swings.  (Tr. 257).  And in January 2011, Plaintiff smiled, had a bright affect, and was talkative.  (Tr. 256).  She reported "having different personalities over the course of the day."  *Id.* She endorsed impulsivity and hypomania.  *Id.*  Dr. Alamir started Risperdal.  *Id.*

Plaintiff presented to the emergency department with complaints of depression and alcohol dependence once in February 2011 and a second time in March 2011.  (Tr. 236-37, 239).

On May 9, 2012, Dr. Alamir opined that Plaintiff could return to work with no restrictions following a four day medical leave. (Tr. 285).

On August 24, 2012, Plaintiff saw Dr. Alamir and reported doing well.  (Tr. 284).  She showed no signs of anxiety, attention difficulties, or hyperactivity.  *Id.*  On October 11, 2012, Plaintiff reported being suicidal after getting drunk.  (Tr. 283).  Plaintiff presented with a flat affect; she was irritable, distracted, and unhappy; and she showed signs of moderate depression and anxiety.  *Id.*  Dr. Alamir diagnosed bipolar 2 disorder, attention deficit hyperactivity disorder, panic disorder without agoraphobia, and obsessive compulsive disorder.  *Id.*  He

3

encouraged her to start a chemical dependency treatment program. *Id.* On November 19, 2012, Plaintiff reported doing "ok." (Tr. 282). She exhibited signs of moderate depression and mild anxiety. *Id.*

On January 10, 2013, Plaintiff presented to Dr. Alamir with a good mood and no signs of depression, anxiety, or manic process. (Tr. 281). Her speech was normal in rate, volume, and articulation, and her language skills and associations were intact. *Id.*

On May 14, 2013, Plaintiff reported to Dr. Alamir that she was "doing good"; she had been sober for three weeks; she was attending Alcoholics Anonymous meetings; and she got a job doing home health care. (Tr. 278). She also reported panic attacks accompanied by trembling or shaking, shortness of breath, dizziness, and a fear of losing control. *Id.* A mental status examination revealed that Plaintiff was friendly, attentive, fully communicative, casually groomed, but anxious. *Id.* Her mood was normal with no signs of depression or mood elevation. *Id.*

On May 31, 2013, Plaintiff presented to the emergency department complaining of depression. (Tr. 288). She explained that she came to the emergency department because she "cannot make her app[ointment] with her psychiatrist anymore." *Id.* She sought a medication adjustment because "her current meds are not working." *Id.* A mental status examination revealed that Plaintiff was calm and cooperative and that her speech was normal. (Tr. 295). Plaintiff was oriented to time, place, and person, and her memory and attention were sustained. *Id.* Diagnoses of bipolar 2 disorder , ADHD, and anxiety were noted, and she was assigned a Global Assessment of Functioning (GAF) score of 51-60, which indicated "some difficulty in functioning" *Id.*

She returned to the emergency department on June 5, 2013, presenting with suicidal ideation, depression, anxiety, and agitation. (Tr. 315). The attending physician noted exacerbating factors, including family problems and medication changes. *Id.* On examination, Plaintiff was cooperative, alert, and oriented to all spheres. (Tr. 317). She was diagnosed with depression, suicide risk, and bipolar disorder. *Id.* After she was found stable and cleared medically, Plaintiff was discharged. (Tr. 320). Outpatient follow-up was recommended. *Id.*

Plaintiff underwent a mental health assessment on June 24, 2013. (Tr. 344). The clinician noted very rapid alternation between manic symptoms and depressive symptoms. *Id.* A mental status exam revealed a dysphoric, depressed, anxious, and frustrated mood. (Tr. 348). Her GAF score was between 41-50, indicating serious symptoms. (Tr. 349).

On July 29, 2013, Plaintiff presented to Christian Steiner, M.D., for pharmocological management. (Tr. 329). On mental status examination, Plaintiff was cooperative, oriented in all spheres, showed no evidence of paranoia or delusions, and had sustained attention and concentration, as well as normal recent and remote memory. (Tr. 330).

On September 4, 2013, Plaintiff presented to the emergency department with suicidal ideation and anxiety. (Tr. 374). A mental status examination revealed poor insight, poor judgment, anxious mood, and suicidal thoughts. (Tr. 376). She was diagnosed with anxiety, depression, suicide risk, bipolar disorder, drug abuse, and psychosis. *Id.* She was deemed stable, directed to follow up with MetroHealth, and discharged. (Tr. 377).

On October 4, 2013, Plaintiff established psychiatric care with Michael Dayem, M.D., presenting with anxiety, depression, irritability, suicidal thoughts, and short temper. (Tr. 450). A mental status examination revealed well-groomed appearance, average eye contact,

overweight build, normal speech, appropriate volume, average activity, cooperative attitude, restless behavior, tense affect, depressed and anxious mood. (Tr. 450-51). Plaintiff reported having thoughts of suicide but she did not feel she was a threat to herself or others. (Tr. 450). Her medications were adjusted, and she was directed to follow up in one week. (Tr. 452). On November 15, 2013, Plaintiff reported to Dr. Dayem that she had become hysterical and she was crying uncontrollably for several days. (Tr. 463-64). On December 27, 2013, Plaintiff reported to Dr. Dayem that she enjoyed the holidays until she pulled a muscle in her back. (Tr. 478). Plaintiff noted improvements since increasing her Klonopin and Neurontin dosages. (Tr. 477). She denied medication side effects, and reported being "satisfied" with treatment at that time. (Tr. 478).

On October 16, 2013, Plaintiff presented to Michael Jesse, D.O., with complaints of vertigo. (Tr. 417). She presented with intact judgment and insight and normal mood and affect. (Tr. 419). In November 2013, Plaintiff again presented to Dr. Jesse, seeking a referral to pain management and to review lab work. (Tr. 413). Dr. Jesse found no reason to refer her to pain management. (Tr. 416).

On March 3, 2014, Plaintiff established care with Scott Schmitt, M.D., on referral from her counselor. (Tr. 538). Plaintiff reported periods of depression lasting months at a time, crying spells, irritability, ruminations, feelings of hopelessness, chronic suicidal ideation, and problems with thinking, concentration, memory. (Tr. 539). Plaintiff also reported experiencing high energy periods that could last up to one week, during which she was very active, at times irritable, at times euphoric, and impulsive. *Id.* Plaintiff stated that she was easily distracted; that she has trouble paying attention to details; that at times she has trouble comprehending things,

and that she frequently forgot things. (Tr. 539-540). Plaintiff's last alcohol use was reportedly in April 2013. (Tr. 540). A mental status examination revealed an appropriately groomed appearance, cooperative demeanor, normal activity, good eye contact, normal speech, moderate depression, anxiety, anger, and anhedonia, full and appropriate affect, logical associations, fair judgment and insight, orientation to time, person, situation, and place, and intact memory. (Tr. 540-41).

On May 5, 2014, a mental status exam revealed uncontrollable crying and suicidal ideation with a plan. (Tr. 527). Dr. Schmitt recommended further evaluation at the emergency department. (Tr. 526). After begin examined by emergency physicians, Plaintiff was admitted to the hospital. (Tr. 486). She presented with suicidal ideation and a deterioration of her mood state. *Id.* She reported that in previous months, she had been experiencing a considerable amount of worsening mood instability featuring a mixture of depressive features, which caused an increase in sleep problems, lower level of mood, poor energy, poor motivation, and more intense suicidal preoccupations. *Id.* Her discharge diagnoses on May 7, 2014 included bipolar disorder and post-traumatic stress disorder. (Tr. 487).

In June, July, and August 2014, Plaintiff presented for mental health evaluation and management with Dr. Schmitt. (Tr. 511, 514, 517, 520). Mental status examinations revealed mild depression and anxiety. (Tr. 513, 516, 519, 522). During her June appointment, Plaintiff reported taking her medications as prescribed and that she felt "really good." (Tr. 521). On July 10, Plaintiff reported an improvement in her mood as she continued to take her medication as prescribed. (Tr. 518). She denied medication side effects. *Id.* On July 25, 2014, she reported

doing fairly well overall but noted some difficulty with low energy and low motivation. (Tr. 515).

On November 18, 2014, Plaintiff presented Dr. Schmitt, noting some improvement in her depression. (Tr. 509). She reported no medication side effects. *Id.* However, she was at times still prone to depressed periods. (Tr. 509). Dr. Schmitt discussed increasing her activity and spending more time with her family, which improved her mood. (Tr. 508). A mental status exam revealed mild depression and anxiety, intact memory, and normal thought processes. (Tr. 510).

In December 2014, Plaintiff saw Dr. Schmitt and reported increased stress and anxiety related to her back pain, limited mobility, and a possible upcoming surgery. (Tr. 506). A mental status exam revealed mild depression and moderate to severe anxiety. (Tr. 507). In January 2015, Plaintiff reported that medication was helpful for her mood. (Tr. 503). Plaintiff's depression was mild, and anxiety was moderate. (Tr. 504).

In February 2015, Plaintiff reported being restricted in her activity as she was recovering from surgery, and she told Dr. Schmitt she was experiencing continuing anxiety. (Tr. 500). She was reportedly taking her medication as prescribed, which was helping with her symptoms. (Tr. 499). A mental status examination revealed that an appropriately groomed appearance, good eye contact, open demeanor, intact remote and recent memory, mild depression and moderate anxiety. (Tr. 501).

C.    **Opinion Evidence**

In August 2013, Dr. Mel Zwissler, Ph.D., reviewed Plaintiff's records on behalf of the state agency. (Tr. 70). Dr. Zwissler opined that Plaintiff had no memory or understanding

limitations, but would be moderately limited in her ability to carry out detailed instructions or to maintain attention and concentration for extended periods. (Tr. 69). He also opined that she would be moderately limited in her ability to work in coordination with, or proximity to, others without being distracted by them, or to complete a normal workweek without interruptions from her psychological symptoms. (Tr. 69-70). Dr. Zwissler opined that Plaintiff had no limitations in social interaction, but would be moderately limited in her ability to respond to changes in workplace settings. (Tr. 70).

Dr. Jaime Lai, Psy.D., reviewed Plaintiff's records on reconsideration for the state agency in January 2014. (Tr. 85). Dr. Lai affirmed Dr. Zwissler's opinion that Plaintiff could adapt to minor changes in the workplace, perform one to four step tasks in an environment without high production quotas and with superficial interactions with coworkers, supervisors, and the general public. (Tr. 85).

On August 14, 2013, Dr. Alamir completed a Mental Residual Functional Capacity Questionnaire for Plaintiff, noting that he had been treating Plaintiff since approximately 2008. (Tr. 354). He identified the following symptoms: appetite disturbance with weight change, decreased energy, difficulty thinking or concentrating, hyperactivity, easy distractibility, sleep disturbance, and recurrent severe panic attacks. (Tr. 355). Dr. Alamir opined that Plaintiff will be unable to meet competitive standards for carrying out even very short and simple instructions. She will likely be absent more than four (4) days per month, and will be unable to maintain regular attendance and punctuality within customary, usually strict tolerances. (Tr. 356).

In February 2015, Dr. Schmitt completed a Mental Residual Functional Capacity statement. (Tr. 543). He opined that Plaintiff had "poor or no" ability to remember work-like

procedures; maintain attention for two-hour periods; maintain regular attendance; sustain an ordinary routine; work in proximity to others; complete a normal workday; perform at a consistent pace; accept instructions; respond to criticism; get along with co-workers; respond to changes in work routine; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; set realistic goals; adhere to basic standards of neatness and cleanliness; and deal with the stress of semi-skilled and skilled work.  (Tr. 543-44).  He further opined that Plaintiff had a fair ability to understand and remember short and simple instructions; carry out short instructions; make simple work decisions; ask simple questions or request assistance; and interact with the public.  (Tr. 544).  He opined that Plaintiff's impairments would cause her to be absent from work more than three times per month.  (Tr. 545).

**D.      Hearing Testimony**

During the June 2015 hearing, Plaintiff testified to the following:

- Plaintiff testified that she was 25 years old and lived with her husband.  (Tr. 39, 41).

- She no longer drove because her medications made her drowsy.  (Tr. 42).

- She graduated from high school, could read, write, and do simple arithmetic.  (Tr. 42-43).

- She testified that her medications help her psychological symptoms, but they cause weight gain, drowsiness, and sometimes distress.  (Tr. 44-45, 50).  She claimed her memory had been "severely damaged" by her medication.  (Tr. 46).  Plaintiff testified that she had problems with crowds, and did not watch TV or use a computer.  (Tr. 46-47).

- In a typical day, she made snacks and visited with her family; once or twice a month she attended AA meetings.  (Tr. 49-50).

The ALJ noted that Plaintiff had no vocationally relevant work or experience. (Tr. 54).

The ALJ posed the following hypothetical question:

> I'd like you to assume an individual who is 25 years old; has twelfth grade education; can read and write simple English, can perform simple arithmetic. This individual is limited to work of sedentary exertional requirements, with additional non-exertional limitations; specifically no climbing of ladders, ropes, or scaffolds; and no stooping kneeling, crouching or crawling as a job requirement; occasional climbing of ramps and stairs, and balancing; no exposure to hazards, by which I mean to include heights, machinery, commercial driving; and a mental limitation that she perform simple, routine, tasks in a low stress environment, specifically not fast paced, straight quotas, or frequent duty changes with superficial interpersonal interactions. Are there jobs existing in significant numbers in the economy that this individual could perform?

(Tr. 55).

The VE testified that such a hypothetical person could perform the jobs of document preparer, addressing clerk, and surveillance system monitor. (Tr. 55-56).

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).1

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while he/she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits,

a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

# IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2.  The claimant has not engaged in substantial gainful activity since September 5, 2012, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.  The claimant has the following severe impairments: degenerative disc disease of the lumbosacral spine, status-post hardware fixation with disc bulging of the cervical spine; bipolar disorder with depression; panic disorder; attention deficit hyperactivity disorder; history of vertigo; history of alcohol dependence (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except for no climbing of ladders, ropes or scaffolds, stooping, kneeling, crouching or crawling; occasional climbing of ramps and stairs and balancing; no exposure to hazards such as heights, machinery, commercial driving; and mental limitation that she perform simple, routine tasks in a low stress environment (i.e. no fast pace, strict quotas or frequent duty changes) with superficial interpersonal interactions (20 CFR 404.1569a and 416.969a).

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on January 26, 1990 and was 22 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 5, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-29).

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial

14

evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.*

*Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

**A.**     **First Assignment of Error: Treating Physician Rule**

Plaintiff maintains that substantial evidence does not support the ALJ's decision to afford less than controlling weight to the opinions of her treating physicians, Dr. Alamir and Dr. Schmitt.  The Court will address each of their opinions, in turn, below.

A treating source opinion must be given "controlling weight" if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  However, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions).  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[2]

---

[2]     Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). *See also Gayheart*, 710 F.3d at 376. The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.[3]

---

requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

[3] "On the other hand, opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6)." *Gayheart*, 710 F.3d at 376.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

## 1. Dr. Alamir

Plaintiff maintains that the ALJ failed to provide "good reasons" for affording Dr. Alamir's opinion less than controlling weight. Dr. Alamir opined that Plaintiff will be unable to meet competitive standards for carrying out even very short and simple instructions. She will likely be absent more than four (4) days per month, and will be unable to maintain regular attendance and punctuality within customary, usually strict tolerances. (Tr. 356).

After a lengthy discussion of the medical evidence, the ALJ assigned Dr. Alamir's opinion less than controlling weight, reasoning as follows:

> In a medical source statement dated August 14, 2013, Dr. Alamir indicated the claimant's symptoms include decreased energy, appetite disturbance, hyperactivity, sleep disturbance and recurrent severe panic attacks (Exh. 1l F, p. 3). Dr. Alamir reported the claimant has severe ADHD and panic disorder and opined overall she would have serious functional limitations (Exh. 1l F, pp. 4 - 5). Dr. Alamir also reported the claimant's anxiety and depression exacerbate her back pain and she would be absent more than four days per month (Exh. 1lF, p. 6). The undersigned gives some weight to Dr. Alamir's opinion to the extent the record supports the existence of severe mental health impairments. However, as discussed above, the overall treatment record shows the claimant's symptoms are managed with proper medications, with no evidence of side effects with no more than moderate mental health symptoms at best. Specifically, as discussed above, with proper medications and sobriety, medical professionals consistently found the claimant cooperative and oriented to all spheres with normal thought process, concentration and memory, all of which are inconsistent with debilitating mental health symptoms (Exhs. 8F, p. 8;10F, p. 3). In fact, follow-up notes with Dr. Alamir that do not mention alcohol use, show improved mental status, with no evidence of impaired judgment, suicidal ideation, hyperactivity or attention difficulties and no signs of anxiety (Exh. 7F, pp. 5, 8, 10). As such, the undersigned finds Dr. Alamir's assessment and opinion unsupported by the record as a whole.

(Tr. 27).

Upon review of the record and the ALJ's written decision as a whole, the Court concludes that the ALJ properly provided sufficiently specific reasons, with adequate support from the record, for assigning only "some weight" to the opinion of Dr. Alamir. The ALJ determined that Dr. Alamir's opinion was unsupported by the record as a whole, and, specifically, the ALJ accurately noted that Plaintiff's symptoms were generally mild when properly managed by medication and when Plaintiff was sober.

The Court's review of the record reveals adequate evidence to reasonably support the ALJ's conclusion. As noted by the ALJ, after maintaining three weeks of sobriety, she told Dr. Alamir she was "doing good." (Tr. 24, 278). Although she complained of continuing anxiety,

Dr. Alamir noted normal mood and no signs of depression. *Id.* On September 6, 2013, while seeking a medication refill in the emergency department, Plaintiff noted that "her symptoms are well controlled on her home medications," and "she denied the presence of any associated symptoms at [that] time." (Tr. 24, 380). On December 27, 2013, Plaintiff reported no side effects and that she was satisfied with her treatment. (Tr. 24-25, 478). On June 10, 2014, Plaintiff saw Dr. Schmitt and reported to feeling "really good" when taking her medications as prescribed. (Tr. 25, 521). In June, July, and August 2014, her depression was rated as "none to mild" or "mild" or "maybe a smidge" and her anxiety as "none to mild" or "mild," and she reported overall improvement in her mood when she took her medications as prescribed. (Tr. 25, 513, 516, 518, 522). Further, treatment notes from November 2014 through February 2015, routinely rate Plaintiff's depression as or "mild" (Tr. 501, 504, 507, 510). Her anxiety was frequently rated "mild" (Tr. 510, 513, 516, 519, 522) or "moderate." (501, 504).

In addition, the ALJ cited specific evidence to show that Plaintiff's symptoms were exacerbated when she failed to take her medications as prescribed and when she drank alcohol. In particular, as noted by the ALJ, in one instance Plaintiff presented to the emergency department with suicidal ideation after having run out of medication. (Tr. 374-75). In two instances in 2011, she presented to the emergency department with symptoms associated with alcohol abuse. (Tr. 23, 236, 239). In October 2012, Plaintiff reported to Dr. Alamir that she became suicidal after getting drunk. (Tr. 283). And in July 2013, Plaintiff indicated that she was not taking her medications as prescribed. (Tr. 330). This evidence also reasonably supports the ALJ's conclusion.

The Court rejects Plaintiff's argument that the above-described reasons are not "good reasons." With respect to the ALJ's conclusion that her symptoms were being managed by medication, Plaintiff maintains that successful symptom management does not reasonably equate to Plaintiff being asymptomatic. Plaintiff asserts that she had ongoing symptoms despite her medication. Therefore, Plaintiff argues, it was improper to rely on evidence of successful medication management in order to discount Dr. Alamir's opinion. This argument is not persuasive. First, an ALJ may rely on a claimant's positive response to medication when evaluating a treating physician's opinion. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (substantial evidence supported ALJ's decision where evidence showed improvement when claimant uses medication as prescribed).

Further, contrary to Plaintiff's position, the ALJ did not conclude that Plaintiff was completely asymptomatic. Rather, as noted in the administrative decision, the ALJ recognized that Plaintiff had severe impairments and gave Dr. Alamir's opinion some weight insofar as the record supported the existence of those impairments. The ALJ also recognized that Plaintiff had certain mental limitations, i.e., "that she perform simple, routine tasks in a low stress environment (i.e. no fast pace, strict quotas or frequent duty changes) with superficial interpersonal interactions," but that there were jobs she could do despite those limitations. The ALJ did not err in relying on evidence that Plaintiff's symptoms were managed through medication.

Plaintiff also presents evidence to support her claim that Dr. Alamir's opinion should be entitled to controlling weight due to its consistency with the record. In particular, Plaintiff cites a treatment note in which she reported to her psychiatrist that despite medication, she had crying

21

spells, irritability, ruminations, feelings of hopelessness, suicidal ideation, and problems with thinking and memory. (Tr. 539). To be clear, Plaintiff cites evidence which could be used to reasonably support a conclusion opposite that reached by the ALJ. However, this Court's review of the ALJ decision is based on the record as a whole, and based on such a review, the ALJ's decision is adequately supported overall. *See Heston*, 245 F.3d at 535. As just discussed, Plaintiff's depression and anxiety was typically mild to moderate; she reported doing well when taking her medication as prescribed; and she tended to do worse when she drank alcohol. Under the applicable substantial evidence standard, an ALJ's decision that is supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512. Here, the ALJ's decision falls within the "zone of choice" contemplated under the substantial evidence standard. *See Mullen*, 800 F.2d at 545

### 2. Dr. Schmitt

Plaintiff next argues that the ALJ erred by affording less than controlling weight to her treating psychiatrist Dr. Schmitt. Dr. Schmitt opined that Plaintiff had "poor or no" capacity to engage in a number of work related mental abilities and aptitudes, including *inter alia* remembering work-like procedures; maintaining attention for two-hour periods; maintaining regular attendance; sustaining an ordinary routine; working in proximity to others; completing a normal workday; and performing at a consistent pace. He further opined that due to her impairments Plaintiff would likely be absent from work four or more times per month. (Tr. 543-45).

The ALJ assigned "no weight" to Dr. Schmitt's opinion, reasoning as follows:

The undersigned has read and considered the mental residual functional capacity statement submitted by [Dr. Schmitt] on February 26, 2015 (Exh. 21F). The

undersigned gives no weight to [Dr. Schmitt's] opinion because it is unsupported by the record as a whole as discussed above in detail, including his own treatment notes in which he consistently found evidence of mild depression, mild to moderate anxiety, normal memory and pleasant affect (Exh. 20F, pp. 3 -4, 10, 13, 16, 19, 21). Additionally, the claimant reported that when she takes her medications as prescribed she felt "really good" (Exh. 10F, p. 24). The claimant reported an increase in energy and reported she had been cleaning the house and working outside around the house, and continued to deny any medication side effects (Exh. 20F, p. 24). For these reasons, the undersigned finds [Dr. Schmitt's] opinion is unsupported by the record as a whole.

(Tr. 27).

For reasons similar to those discussed above with respect to Dr. Alamir, substantial evidence supports the ALJ's conclusion that Dr. Schmitt's opinion deserves less than controlling weight. While her anxiety and depression fluctuated, Dr. Schmitt's treatment notes show that more often than not Plaintiff's depression was "none to mild" or "mild" or "maybe a smidge" (Tr. 501, 504, 507, 510, 513, 516, 519, 522), and her anxiety was rated "mild" (Tr. 510, 513, 516, 519, 522) or "moderate." (501, 504). In addition, as noted by the ALJ, Plaintiff reported to Dr. Schmitt that her symptoms improved when she took her medication as prescribed. This evidence reasonably supports the ALJ's conclusion that Dr. Schmitt's opinion was unsupported by the record as a whole.

Plaintiff points out that there is also evidence showing that Plaintiff at times experienced more pronounced pronounced episodes of depression and anxiety. (Tr. 507, 525, 527, 531, 534, 536, 537, 540). Again, as just discussed with respect to Dr. Alamir's opinion, the substantial evidence standard contemplates a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). Despite the existence of evidence that may support

Plaintiff's position in this case, the decision of the ALJ must stand because, as described above, there is also substantial evidence that reasonably supports his conclusion. Plaintiff has failed to establish that the ALJ erred by affording less than controlling weight to the opinion of Dr. Schmitt.

**B.      Second Assignment of Error: Step Three**

Next, Plaintiff argues that the ALJ erred at step three of the sequential evaluation when he concluded that Plaintiff's mental impairments did not meet or medically equal the criteria outline in Listings 12.04, *Affective Disorders*.

At the third step in the disability evaluation process, a claimant will be found disabled if her impairment meets or equals one of the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). Essentially, a claimant who meets the requirements of a Listed Impairment, as well as the durational requirement, will be deemed conclusively disabled and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). It is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *See e.g. Lett v. Colvin*, 2015 WL 853425 at * 15 (N.D. Ohio Feb. 26, 2015). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*,

582 F.3d 647, 652 (6th Cir. 2009). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant is also disabled if her impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

Where the record raises a "substantial question" as to whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *See Reynolds*, 424 F. App'x at 414-15. In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision. *See id.* at 416-17.

In this case, the relevant Listing, 12.04, *Affective Disorders*, provides, in pertinent part:

12.04 *Affective Disorders*. Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

The question raised by Plaintiff in this instance is whether the ALJ erred by concluding that Plaintiff did not meet the part B criteria. To satisfy part B, Plaintiff must show that her impairment resulted in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, § 12.04.

> With respect to Plaintiff's capacity for social functioning, the ALJ reasoned as follows:

> In social functioning, the claimant has moderate difficulties. The claimant testified she does not have any hobbies and only spends time with her parents. However, the claimant testified she attends Alcoholics' Anonymous (AA) meetings once or twice per month, which would require her to leave the house and interact with others on some level (Hearing Testimony; 20F). Additionally, follow-up notes with Dr. Alamir that do not mention alcohol use, show improved mental status, with no evidence of impaired judgment, hyperactivity or attention difficulties and no signs of anxiety (Exh. 7F, pp. 5, 8, 10). Furthermore, during hospital visits for treatment of her physical complaints, medical professionals consistently found the claimant well appearing, pleasant, alert and in no distress. Additionally, during these visits, the claimant denied any depression or anxiety symptoms (Exhs. 12F, pp. 1, 5; 16F, pp. 3 -4, 7, 14, 18). For these reasons, the undersigned finds that when compliant with medication, the claimant's mental impairments caused no more than moderate difficulties in social functioning.

(Tr. 20).

Plaintiff argues the ALJ erred and that he should have found that Plaintiff had marked limitations in maintaining social functioning, asserting that the opinions of Dr. Schmitt and Dr. Alamir "prove" Plaintiff has marked limitations. Plaintiff contends that their opinions show that Plaintiff has significant difficulty accepting instructions and responding to criticism, and serious limitations in getting along with co-workers, the general public, and maintaining socially appropriate behaviors. (Doc. 14 at 15; Tr. 356-57).

Plaintiff has failed to establish that the ALJ erred in finding that Plaintiff had moderate restrictions in her capacity for social functioning. First, Plaintiff's reliance on the respective opinions of Dr. Schmitt and Dr. Alamir is misplaced. As discussed above, substantial evidence supports the ALJ's decision to afford their opinions less than controlling weight. Plaintiff cites no additional evidence from the record to support her argument, whether in the form of treatment notes or medical opinions. As such, Plaintiff has not met her burden to show she has satisfied

this criterion.  *See Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987).

Further, the ALJ cited substantial evidence to support his conclusion that Plaintiff only had

moderate difficulties with social functioning.  For instance, there is evidence that Plaintiff

attended Alcoholics Anonymous meetings twice a month and that she interacted with her

husband and her parents.  Additionally, her physicians routinely found her pleasant and

cooperative.  Plaintiff does not challenge the ALJ's reliance on this evidence.

With respect to maintaining concentration, persistence, or pace, the ALJ determined the

following:

> With regard to concentration, persistence or pace, the claimant has moderate
> difficulties. The claimant testified at the hearing that she has short-term and long-term
> memory problems.  However,  follow-up notes with Dr. Alamir that do not mention
> alcohol use, show improved mental status, with no evidence of impaired judgment,
> suicidal ideation, hyperactivity or attention difficulties and no signs of anxiety (Exh. 7F,
> pp. 5, 8, 10).  Additionally, as mentioned above, medical professionals consistently
> found evidence of mild depression, mild to moderate anxiety, normal memory and
> pleasant affect (Exh. 20F, pp. 3-4, 10, 13, 16, 19, 21).  Furthermore, the claimant
> reported that when she takes her medications as prescribed she felt "really good" (Exh.
> 10F, p. 24). The claimant reported an increase in energy and reported she had been
> cleaning the house and working outside around the house, and continued to deny any
> medication side effects (Exh. 20F, p. 24).   For these reasons, the undersigned finds that
> when compliant with medication, the claimant's mental health impairments cause no
> more than moderate difficulties in the area of concentration, persistence or pace.

(Tr. 20-21).

Plaintiff argues that the ALJ's conclusion with respect to maintaining concentration,

persistence, or pace was erroneous.  Plaintiff asserts that her severe ADHD and her other mental

impairments cause problems with concentration, persistence, or pace.  She notes that Dr. Schmitt

opined that Plaintiff had no useful ability to maintain attention for 2-hour segments and perform

at a consistent pace without an unreasonable number of breaks.  Plaintiff argues that this

evidence coupled with her testimony "proves" that she has satisfied the criteria of Listing 12.04.

Plaintiff's argument is unpersuasive. Again, Plaintiff's reliance on the opinion of Dr. Schmitt is misplaced, since, as discussed above, the ALJ properly concluded it should be afforded no weight. And while Plaintiff was diagnosed with ADHD, it is well-established that the "mere diagnosis" of a condition "says nothing" about its severity, or its effect on a claimant's ability to perform work. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). Plaintiff cites no evidence besides the opinions of her treating physicians to support the idea that her ADHD "cause[d] problems" with her concentration, persistence, or pace. Finally, there is no merit to Plaintiff's claim that her testimony, in combination with other evidence, proves she satisfied the requisite Listing criteria. Plaintiff does not cite any particular testimony to support this claim, and, as stated in the administrative decision, the ALJ found that Plaintiff's statements concerning, the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Plaintiff does not argue that the ALJ's credibility assessment of Plaintiff was erroneous. As a consequence, the Court rejects Plaintiff's argument she met the Listing based on her testimony.

In short, the ALJ did not err at step three of the sequential evaluation.

//

//

//

//

//

//

//

## VII.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                                              *s/Jonathan D. Greenberg*
                                              Jonathan D. Greenberg
                                              United States Magistrate Judge

Date: <u>May 10, 2017</u>

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**